UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THE ROYAL BANK OF SCOTLAND     :
        :
        v.        :     C.A. No. 11-372ML
        :
M/T STAVRODROMI, *in rem*, and     :
WALL SHIPMANAGEMENT S.A.,        :
*in personam*        :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

Pending before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B)) is Plaintiff

The Royal Bank of Scotland's (the "Bank") Motion to Dismiss the *In Rem* Claims brought by

Intervening Plaintiffs One Net Limited ("One Net") and Admibros Shipmanagement Co., Ltd.

("Admibros"). (Document No. 70). The Intervening Plaintiffs have objected. (Document Nos. 77

and 78). A hearing was held on September 7, 2012. For the following reasons, I recommend that

the Bank's Motion to Dismiss be GRANTED in part and DENIED in part as specified herein.

**Background**

Plaintiff commenced this action on August 17, 2011 to enforce a maritime lien *in rem* against

the Tanker Stavrodromi pursuant to a First Priority Ship Mortgage and seeking judgment *in*

*personam* against Wall Shipmanagement, its owner, pursuant to a Guarantee. (Document No. 1).

The Tanker was originally arrested in this District in 2010 as security for a maritime claim brought

in N.E. Vernicos-Argonaftis Salvage and Towage Consortium v. Ocean Tankers Holdings Public

Company Limited, C.A. No. 1:10-cv-0441ML. That claim was resolved and, on April 21, 2011,

Chief Judge Lisi vacated the maritime arrest of the Tanker pursuant to a Stipulation of Release of

Vessel.  The Tanker never left port in this District and was subsequently arrested again by the Bank

in this action on August 18, 2011 to foreclose on the maritime lien created by the Ship Mortgage.

(Document Nos. 7 and 8).

The Tanker was the subject of an Interlocutory Sale on February 29, 2012.  The sale was

confirmed by Chief Judge Lisi on March 12, 2012.  (Document No. 66).  The sale price was

$3,500,000.00 plus $71,492.66 for the fuel oil and lubricating oil aboard the Tanker at the time of

the sale.  (Document No. 91 at p. 2).  On August 14, 2012, Chief Judge Lisi approved total *in

custodia legis* expenses of $1,326,403.35 and approved disbursement of such amount from the

Court's Registry.  Id.  Further, on November 28, 2012, Chief Judge Lisi approved disbursement of

$1,539,994.00 to the Bank.  (Document No. 101).  After deducting these disbursements and the

$50,000.00 statutory commission due to the Marshal, there is presently a balance of $655,095.31

in the Court's Registry which equates to the value of the pending claims of One Net and Admibros.

Id. The Court has retained jurisdiction to determine the relative priority of remaining claims to the

sales proceeds and the distribution of such proceeds.  Id.

On January 12, 2012, One Net filed a Complaint-in-Intervention to enforce a maritime lien

for necessaries against the Tanker.  (Document No. 34-1).  One Net alleges that it was engaged by

Admibros, on behalf of and as an agent of the Tanker and its owner, to provide satellite

communication equipment and services to the Tanker and that such agreement is a maritime

contract.  Id.  It alleges that it provided such equipment and services to the Tanker between January

2010 and August 2011, and while the Tanker was under arrest in this District.  Id.  One Net alleges

that the Tanker and its owner breached the agreement by failing to make payments totaling

$41,340.13 and that its unpaid services constitute "a maritime lien for 'necessaries' against the

[Tanker] pursuant to the Commercial Instruments and Maritime Lien Act, 46 U.S.C. §§ 31341-31343" which has priority over the Bank's claim in this action. Id. at 5.

On January 13, 2012, Admibros also filed a Complaint-in-Intervention to enforce a maritime lien for necessaries against the Tanker. (Document No. 38). Admibros alleges that it was engaged by the Tanker's owner to be the commercial manager of the Tanker pursuant to a Management Agreement dated October 1, 2008. Id. Admibros alleges that it is entitled under the Management Agreement to payment for its services in the amount of $500.00 per day, payable in advance by monthly installments, a 1.25% commission on all of the Tanker's earnings and certain brokerage commissions. Id. Admibros claims a total due and unpaid of approximately $613,755.18, plus interest and costs. Id. Admibros alleges that its services constitute a maritime lien for necessaries against the Tanker pursuant to the Commercial Instruments and Maritime Lien Act, 46 U.S.C. §§ 31341-31343 which has priority over the Bank's claim in this action. Id. Additionally, Admibros claims that approximately $372,611.98 of the claimed amount due was "incurred and/or paid by Admibros on behalf of the [Tanker] while *in custodia legis*" and thus such amount is entitled to first priority as against any other liens or claims on the Tanker. Id.

On April 27, 2012, the Bank moved to dismiss the *in rem* claims brought against the Tanker by both One Net and Admibros arguing that their liens, if any, "clearly do not prime [the Bank's] maritime lien." (Document No. 71). The Bank takes no position on whether One Net or Admibros have *in personam* contract claims against the Tanker's owner but accurately points out that, if it prevails on its arguments, they have no prospect of recovery against the Tanker's sales proceeds since the Bank's default claim on the mortgage dwarfs the remainder of the $3,500,000.00 sale price of the Tanker on deposit in this District. Id. at p. 2, n.2.

**Standard of Review**

Under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff, see Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994); taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences, see Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002); Carreiro v. Rhodes Gill & Co., 68 F.3d 1443, 1446 (1st Cir. 1995). If under any theory the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied. Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994).

While a plaintiff need not plead factual allegations in great detail, the allegations must be sufficiently precise to raise a right to relief beyond mere speculation. See Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) (abrogating the "no set of facts" rule of Conley v. Gibson, 355 U.S. 41, 44-45 (1957)). "The complaint must allege 'a plausible entitlement to relief' in order to survive a motion to dismiss." Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008) (quoting Twombly, 550 U.S. at 559). See also Ashcroft v. Iqbal, 556 U.S. 662, 679 ("[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief"). The Court of Appeals has cautioned that the "plausibility" requirement is not akin to a "standard of likely success on the merits," but instead, "the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor." Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico, 628 F.3d 25, 30 (1st Cir. 2010).

"'Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint.'" Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (quoting Trans-Spec Truck Serv., Inc. v. Centerpillar, Inc., 524 F.3d 315,

321 (1st Cir. 2008)). Rule 12(d) further directs that, if matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. Thus, the Court has discretion as to whether or not to consider matters outside the pleadings in ruling on a motion to dismiss but, if it does so, it must follow Rule 12(d) and convert the motion to one for summary judgment and give the parties a reasonable opportunity to present all the material that is pertinent to the motion. See Trans-Spec Truck Serv., 524 F.3d at 321.

Here, despite this clear precedent, the Bank improperly submitted three declarations with attached exhibits in support of its Rule 12(b)(6) motion. (See Document Nos. 72, 73 and 80). The first is the Declaration of Bill O'Dell, a representative of the substitute custodian, who disputes the claim of Admibros that it provided *in custodia legis* services or goods while the Tanker was under arrest in this District. (Document No. 72). The second is the Declaration of the Bank's Counsel which is accompanied by various loan documents including a Manager's Undertaking and Subordination of Payments Agreement executed by Admibros as well as a transcript of a hearing held before this Court in C.A. No. 1:10-cv-0441-ML.[1] (Document No. 73). The third is the Declaration of the Bank's Appointed Security Agent who also seeks to authenticate such loan documents. (Document No. 80). In addition to these declarations and documents, the Bank also provides additional "factual argument" in its memoranda which go beyond or contradict the allegations made by the Intervening Plaintiffs in their respective complaints.

---

[1] At the hearing, I denied the Motion of Wall Shipmanagement, the Tanker's Owner, to vacate the arrest based on my preliminary conclusion that the plaintiffs in that case had "sufficiently stated a valid prima facie admiralty claim against Wall and its alleged alter egos Ocean Tankers and Admibros to allow the attachment to stand." (Document No. 73 at p. 17). However, I described my ruling as "preliminary in nature and...not intended to definitely and finally resolve the disputes in issue" and as a limited determination that "reasonable grounds existed for the issuance of the maritime attachment." Id. at p. 14. Since the matter was ultimately settled, no final judicial determination was ever made on the alter ego issue.

**Discussion**

**A.      The Admibros Claim**

The Bank seeks dismissal of Admibros' lien claims because (1) Admibros is not a "stranger

to the vessel;"[2] (2) it contracted not to make any such claims in the Manager's Undertaking and the

Subordination of Payments Agreement; (3) it functioned as a general agent for the vessel; and (4)

it never supplied any "necessaries" to the vessel.  While these defenses have some facial merit, they

all rely upon declarations, documents and other factual assertions which are not part of or

incorporated into Admibros' Complaint-in-Intervention.  Thus, the Court cannot consider most of

the support for the Bank's argument under Fed. R. Civ. P. 12(b)(6) unless it exercised its discretion

under Fed. R. Civ. P. 12(d) to convert the Motion to one for summary judgment under Fed. R. Civ.

P. 56 and give the parties further opportunity to discover and develop the record.

Here, Admibros expressly objects to the Bank's Motion as "defective" because it relies upon

information and documents beyond the four corners of the Complaint-in-Intervention and any

documents appended to it.  (Document No. 78 at p. 6).  The Bank, in its Reply Memorandum, simply

ignores this argument and contends that Admibros' arguments should be "ignored" because they are

a "shifting morass of irrelevant argument and unsubstantiated allegations" and because "Admibros

simply attempts to create issues of fact where none actually exist...rather than...offering facts that

rebut those advanced by [the Bank]."  (Document No. 79 at p. 3).  However, the Bank fails to

recognize that Admibros has no obligation in responding to a motion under Fed. R. Civ. P. 12(b)(6)

---

[2]  "The 'stranger to the vessel' doctrine dictates that owners of a vessel, or those that have authority over a vessel such that they are in a similar position to owners, are denied maritime liens."  L&L Electronics, Inc. v. M/V Osprey, 764 F. Supp. 2d 270, 272-273 (D. Mass. 2011).  Here, the Bank asserts that Admibros is under common ownership and control with Wall, the owner of the Tanker, and Ocean Tankers, which wholly owns Wall and thus it is legally precluded from placing a maritime lien on the Tanker.

to either present or rebut facts since, by rule, such a motion is limited to a review of the well-pleaded allegations in the Complaint.  Further, since the Bank has filed supporting materials beyond the Complaint in contradiction of the scope of review under Fed. R. Civ. P. 12(b)(6) and has failed to address the issue of conversion under Fed. R. Civ. P. 12(d), I do not recommend that the Bank's Motion be converted and treated as one under Fed. R. Civ. P. 56.[3]  Accordingly, I will not consider the matters outside the pleadings submitted and will review Admibros' Complaint-in-Intervention and the Bank's dismissal arguments in the context of Fed. R. Civ. P. 12(b)(6).

Since the Bank's dismissal arguments primarily rely upon information and documents not contained in, referenced or appended to Admibros' Complaint-in-Intervention, they are fact based defenses not properly presented in a motion brought under Fed. R. Civ. P. 12(b)(6).  However, the Bank also argues that, even putting aside these factual issues, Admibros has not adequately pled its claim that it provided goods and/or services to the Tanker which constitute "necessaries" under the law or goods and/or services to the Tanker during the period of arrest in this District which constitute *in custodia legis* expenses under the law.

I agree with the Bank on this point.  Admibros' Complaint-in-Intervention does not contain sufficient detail as to the actual "necessaries" furnished to the Tanker or as to the goods and/or services provided while the Tanker was *in custodia legis* and under the authority of the Substitute Custodian appointed by this Court.  The First Circuit has instructed that a complaint "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face."  Gonzalez-Maldonado v. MMM Healthcare, Inc., 693 F.3d 244, 247 (1st Cir. 2012) (citing Iqbal, 566 U.S. at

---

[3] A conversion would require a fair period of discovery to develop the record and then essentially a rebriefing of the Motion in compliance with Local Rule Cv 56 to allow the Court to determine, in an orderly fashion, if there are any genuine issues of fact precluding summary judgment.

678).  In other words, "conclusory statements must rest on pleaded facts."  Menard v. CSX Transp.,

Inc., 698 F.3d 40, 45 (1st Cir. 2012).  See also Ocasio-Hernandez v. Fortuna-Burset, 640 F.3d 1, 12

(1st Cir. 2011)(holding that a plaintiff is not entitled to proceed by virtue of conclusory allegations

that merely parrot the elements of a cause of action).

Here, Admibros' conclusory allegations of providing "necessaries" and *in custodia legis*

services are not sufficient to state a factually plausible entitlement to the *in rem* relief sought.  Thus,

I recommend that the Bank's Motion to Dismiss Counts I and III of Abmibros' Complaint-in-

Intervention be GRANTED but with leave to amend to plead additional factual detail as to the

"necessaries" and *in custodia legis* goods and/or services which were allegedly provided to the

Tanker and upon whose request or authority such were provided.  I also recommend that Admibros

be reminded and cautioned in such regard by the Court that the legal and factal premise for its

Amended Complaint-in-Intervention must comply with Fed. R. Civ. P. 11(b).[4]

**B.     The One Net Claim**

The Bank seeks dismissal of One Net's lien claim because One Net's "business activities

related to the [Tanker] took place in Cyprus, and [it] fails to allege any facts that could support the

argument that One Net supplied anything in the United States."  (Document No. 71 at p. 18).  Thus,

the Bank argues that One Net does not have a "maritime lien for necessaries provided in the United

States" which might prime the Bank's preferred mortgage lien.  See 46 U.S.C. § 31326(b)(2).  One

Net counters that the satellite communication equipment and services provided to the Tanker were

---

[4] In addition to pleading additional factual detail, Admibros' counsel should also ensure that Abmibros actually has non-frivolous legal arguments that the claims brought against the Tanker (which was owned by a related company) are not legally precluded by the "stranger to the vessel" doctrine or by the Manager's Undertaking and/or Subordination of Payments Agreement executed by Abmibros in connection with the syndicated loan secured by the Ocean Tankers fleet including M/T Stavrodromi.

essential to its operation and constitute "necessaries" within the meaning of the law.  (Document No. 77 at p. 6).

In its Complaint-in-Intervention, One Net alleges that it "provided satellite communication equipment and services to the M/T Stavrodromi between January 2010 and August 2011, and while the Vessel was at the port of Providence, Rhode Island."  (Document No. 34-1 at p. 4).  One Net alleges that it is owed $41,340.13 plus interest and costs for such services.  Id. p. 5. It claims that its services give rise to a maritime lien for "necessaries" against the Tanker pursuant to 46 U.S.C. § 31342. Id.

Under 46 U.S.C. § 31342(a)(1, 2), "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner ... has a maritime line on the vessel" and "may bring a civil action in rem to enforce the lien."  "The statute imposes no restriction on the nationality or other identity of the supplier or the vessel, and no geographic restriction on the place of provision of the necessaries."  Trans-Tec Asia v. M/V Harmony Container, 518 F.3d 1120,1129 (9th Cir. 2008).  Further, pursuant to 46 U.S.C. § 31326(b)(2), a preferred mortgage lien on a foreign vessel such as the lien at issue in this case "is subordinate to a maritime line for necessaries provided in the United States."  See Dresdner Bank AG v. M/V Olympia Voyager, 463 F.3d 1210, 1217 (11th Cir. 2006)(holding that section 31326(b)(2) "does not require that the party asserting maritime lien be a United States entity, nor that all of the activities related to the provision of necessaries take place inside the United States; all that is required is that the necessaries be provided to the Vessel in the United States").  Finally, "necessaries" are generally defined by statute as including "repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. § 31301(4).  However, the term has been interpreted broadly to include "goods, services and intangibles that a careful and

provident owner would provide to enable a vessel to continue to perform well the functions for which she has been designed and engaged." Zitano v. F/V Diamond Girl, 963 F. Supp. 109, 112 (D.R.I. 1997); cf. Motor-Services Hugo Stamp, Inc. v. M/V Regal Empress, 165 Fed. Appx. 837 (11th Cir. 2006) (holding that equipment necessary for provision of telecommunications and internet aboard a cruise ship was essential to ship's mission).

Applying this law and the standard of review applicable under Fed. R. Civ. P. 12(b)(6) to One Net's well-pleaded allegations, I conclude that One Net has sufficiently stated a claim for a maritime lien against the Tanker to survive the Bank's motion to dismiss.[5] Thus, I recommend that the Bank's Motion to Dismiss Count I of One Net's Complaint-in-Intervention be DENIED.

**Conclusion**

For the foregoing reasons, I recommend that the Bank's Motion to Dismiss (Document No. 70) be GRANTED with leave to amend as to Admibros's *in rem* claims,  and DENIED as to One Net's *in rem* claim.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

---

[5] However, to the extent that One Net seeks *in rem* recovery of an early termination fee or penalty, such fee is not a necessary which could give rise to a maritime lien since it was not incurred directly to obtain a good or service necessary to maintain or operate the Tanker. See Bradford Marine v. M/V Sea Falcon, 64 F.3d 585, 588-89 (11th Cir. 1995)(holding that attorney's fees recoverable under a repair contract was not a necessary since it did not help the vessel perform its function). Such a fee may, however, be claimed *in personam* by One Net as part of Count II of its Complaint-in-Intervention. Id.

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
February 12, 2013